**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **KARMEN ESTERS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **vs.** } | **CASE NO. CV 08-B-69-S** |
| } | |
| **THE EPISCOPAL FOUNDATION** } | |
| **OF JEFFERSON COUNTY, doing** } | |
| **business as ST. MARTIN'S IN THE** } | |
| **PINES,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

This Fair Labor Standards Act ("FLSA") case is presently before the court on

plaintiff Karmen Esters's ("Esters") Motion to Facilitate Court-Approved Notice Under

29 U.S.C. § 216(b),[1] (doc. 15),[2] to which is attached a Notice of Right to Opt-In to

Lawsuit, (doc. 16, Ex. A), and a Consent to Become a Party Plaintiff, (doc. 16, Ex. B), for

the court's approval.  Esters has also filed a Motion to Toll the Statute of Limitations,

---

[1] The motion is not entitled a "Motion for Conditional Class Certification," but since the motion requests that the court enter an order both "holding that the above-captioned case will proceed as a collective action" and "authorizing notice," (doc. 15 at 1), and because Esters has filed a "Brief in Support of Motion for Conditional Class Certification and to Facilitate Court-Approved Notice Under 29 U.S.C. § 216(b), (doc. 16), the court assumes that this motion has the dual purposes of seeking conditional class certification as well as court approval of Esters's proposed notice to the class.

[2] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

(doc. 18).  Based upon the record, the arguments of counsel, the submissions of the

parties, and the relevant law, the court is of the opinion that Esters's motion for

conditional class certification is due to be granted, that Esters's Notice of Right to Opt-In

to Lawsuit and Consent to Become a Party Plaintiff are due to be approved *with certain*

*modifications*, and that Esters's motion to toll the statute of limitations is due to be

denied.

## I. MOTION FOR CONDITIONAL CLASS CERTIFICATION

### A. Factual Summary

St. Martin's is a long-term care center located in Birmingham, Alabama, that

consists of a nursing home with 138 beds, an Assisted Living Facility with 71 beds,

retirement apartments with 100 units, and a specialized care assisted living facility for

dementia patients, called the Evergreen Unit.  (Doc. 22-2 at ¶¶ 1–2.)  Its 405 employees

are divided among these four units, as well as in the Administration and Companion

Services departments.  (*Id.* at ¶¶ 2–3.)  Of the approximately 240 employees in the

nursing home, approximately 95 are certified nursing assistants ("CNA"), who are all

non-exempt employees paid on an hourly basis.[3]  (*Id.* at ¶¶ 4–5.)  CNAs are involved in

direct resident care, so their job responsibilities include assisting residents with the

---

[3] At oral argument, counsel for St. Martin's, John Sheffield, informed the court that there are CNAs working in the other patient care units besides the nursing home, but he was unable to quantify that number or the total number of CNAs working at St. Martin's Birmingham location. He also was unable to confirm whether CNAs working in the nursing home ever rotated to the other units, or whether they were permanently assigned to one particular unit.

activities of daily living, such as feeding, bathing, ambulation, and movement from one position to another.  (*Id.* at ¶ 8.)

Esters, as well as the six other plaintiffs who have opted into the action since its filing, LaToya Hasberry, Edith Stewart, LaShaunda Knight, Brent Holcolmbe-Fluker, Charolette Lewis, and Tijuana Yancey, (doc. 8-2), are all non-exempt, hourly-paid CNAs employed by St. Martin's to work in its nursing home.  (Doc. 22-2 at ¶ 8.)

In her amended complaint, Esters alleges three FLSA-related claims and one state common law claim.  The FLSA claims allege that St. Martin's failed to pay Esters and other similarly-situated employees appropriate overtime compensation for all hours worked over forty per work week.  (Doc. 11 at ¶¶ 1, 5–6.)  Specifically, Esters maintains that St. Martin's willfully violated the FLSA by: 1) not providing Esters and similarly-situated employees with, and not paying them for, an uninterrupted meal break pursuant to 29 C.F.R. 785.19, since St. Martin's automatically deducted thirty-minute unpaid lunch breaks from the employees' daily time sheets but expected the employees to work through lunch, and 2) not compensating Esters and similarly-situated employees for "off the clock" and unauthorized pre-shift work,[4] which was in excess of their forty hours per

---

[4] At oral argument, Esters's counsel, David Arendall, represented to the court that he anticipated filing a second amended complaint to allege that *post*-shift work was also uncompensated, explaining that any failure to mention post-shift work in the original and first amended complaint was merely an oversight.  In light of the expected second amended complaint that will include post-shift work, the court discusses conditional certification as if the failure to compensate post-shift work had been alleged in the original or first amended complaint.  If Esters's counsel fails to file a second amended complaint alleging post-shift work within a reasonable time, the court will consider a motion to change the class definition from St. Martin's.

week and for which they were thus entitled to overtime pay. (*Id.* at ¶¶ 13–20.)  Because

Esters contends that these allegations are potentially common to all employees of St.

Martin's, Esters claims that she is entitled to bring her suit as an opt-in collective action

under the FLSA. (*Id.* at ¶¶ 21–30.)  Esters's state law claim, for "Work and Labor,"

involves all unpaid but working meal breaks that did *not* result in overtime and for which

St. Martin's allegedly did not compensate Esters and similarly-situated employees.[5]

Esters and four of the opt-in plaintiffs[6] ("the plaintiffs") have submitted nearly

identical declarations that attest that they are all non-exempt, hourly-paid employees for

whom St. Martin's automatically deducted a thirty-minute lunch break each day, but who

rarely took this lunch break because of the requirements of their jobs as CNAs—that is,

because of the continuous needs of their patients. (*See, e.g.*, Doc. 17-2 at ¶¶ 7–8.)  Even

on the days that the plaintiffs did leave their work stations for their lunch breaks, they

remained "on call" to be available for patient requests. (*See, e.g.*, *id.* at ¶ 8.)  In addition,

each of the declarations states that the respective plaintiff would typically arrive at work

prior to the time his or her shift actually began, and would start working at the time he or

---

[5] This state law claim is the subject of St. Martin's Motion to Dismiss, (doc. 5), and is not relevant to the instant motions, which pertain only to Esters's FLSA claims.

[6] It is unclear to the court why the remaining two opt-in plaintiffs, Charolette Lewis and Tijuana Yancey, have not submitted declarations stating that they held similar positions and were subject to similar policies and practices to that of Esters, the named plaintiff.  With access only to their consents to opt in, the court acknowledges that these two employees desire to opt in, but the court cannot consider whether these plaintiffs are "similarly situated" to Esters with respect to their job requirements and pay provisions, one part of the analysis required to conditionally certify a class.

she arrived; this resulted in overtime for which the plaintiffs were not paid.  (*See, e.g.*, *id.* at ¶¶ 9, 13.)  The declarations further allege that the plaintiffs were not paid overtime for time worked at the end of their shifts.  (*See, e.g.*, *id.* at ¶ 13.)  In supplemental declarations filed with Esters's reply brief, Esters and two of the opt-in plaintiffs, Edith Stewart and LaToya Hasberry, explained that they were not paid overtime for "off the clock" work when they had worked in excess of forty hours in a week because their supervisors had to authorize any overtime for it to be paid; by implication, then, their "off the clock" work was unauthorized.  (*See, e.g.*, Doc. 25-2 at ¶ 4.)  These supplemental declarations maintain that St. Martin's management was aware that the plaintiffs were not being given an uninterrupted meal break, and that the plaintiffs did not inform management themselves about the problems because of the policies stated in the employee handbook, threatening disciplinary action for schedule deviations.  (*See, e.g.*, *id.* at ¶¶ 5, 7.)

The employee handbook does indeed specify procedures for all non-exempt employees to record their work time through the use of time clocks.  (Doc. 22-2 at 19.)  With respect to pre- and post-shift time, the handbook reads:

> Employees must not clock in on the time clock earlier than seven (7) minutes before the beginning of the shift and must not leave the work area and clock out any later than seven minutes after the regularly scheduled ending of the shift.  Any deviations from a schedule not approved by the employee's supervisor may result in disciplinary action.

(*Id.*)  As far as the court can tell, the employee handbook does not contain any mention of

5

the automatic thirty-minute deduction for a lunch break, although a separate employee

orientation form does indicate that if an employee works through a lunch break, the

employee should have the supervisor approve the "Do Not Deduct Lunch" section of the

failure-to-clock form.  (*Id.* at 38.)  This appears to be the same failure-to-clock form that

the employee handbook references as the means by which employees can correct any

failure to clock in or clock out, and that must be signed by the employee's supervisor

prior to the start of the next scheduled work shift or within 24 hours, whichever is earlier.

(*Id.* at 19.)  The employees are warned that those "who chronically fail to clock will be

subject to disciplinary action."  (*Id.*)  With respect to overtime, the employee handbook

states:

> Overtime will be paid for all *authorized* work performed in
> excess of forty (40) hours in a calendar week and will be paid
> only for actual hours worked. . . . In all cases, overtime must
> be authorized by the supervisor prior to its being worked.
> Overtime worked without supervisor approval may result in a
> disciplinary measure.

(*Id.* at 27) (emphasis added).

     According to the declaration of Mamie Mahone, St. Martin's Vice President of

Human Resources, meal breaks for CNAs are typically scheduled by non-exempt

supervisors, such as LPNs and RNs.  (*Id.* at 4.)  It is not entirely clear whether these same

non-exempt supervisors are those who must authorize any overtime or approve any

failure-to-clock forms.

     Esters proposes the following class definition: "any and all persons employed by

6

[St. Martin's] at its Birmingham facility and performing off the clock work pre-shift[7]

and/or during lunch for any work week during the three (3) years preceding the filing of

this complaint in which he/she worked in excess of 40 hours."  (Doc. 11 at ¶ 24.)

## B. Standard for Opt-In Collective Actions Under 29 U.S.C. § 216(b)

Section 216(b) of the FLSA authorizes a plaintiff seeking relief to bring a

"collective action" on behalf of similarly situated persons.  29 U.S.C. § 216(b).  A district

court has discretion, in appropriate cases, to facilitate notice to potential plaintiffs in class

actions brought under § 216(b).  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 156, 169,

171 (1989).  The Eleventh Circuit Court of Appeals has stated that "the broad remedial

purpose of the Act is best served if the district court is deemed to have the power to give

such notice to other potential members of the plaintiff class to 'opt-in' if they so desire."

*Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

However, before approving such notice, "the district court should satisfy itself that there

are other employees who desire to opt-in and who are 'similarly situated' with respect to

their job requirements and with regard to their pay provisions."  *Id*. at 1567–68.

"Plaintiffs bear the burden of demonstrating a reasonable basis for their claim of

classwide discrimination.  The plaintiffs may meet this burden, which is not heavy, by

making substantial allegations of class-wide discrimination, that is, detailed allegations

supported by affidavits which successfully engage defendants' affidavits to the contrary."

---

[7] For the reasons stated above in footnote 4, the court presumes that Esters intended to include post-shift work in the class definition as well.

7

*Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001) (internal

quotation marks omitted), *citing Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir.

1996).

The Eleventh Circuit has suggested that trial courts consider class certification

pursuant to § 216(b) using a two-tiered approach.  *Hipp,* 252 F.3d at 1217–19 (11th Cir.

2001); *see also Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952–53 (11th Cir. 2007);

*Cameron-Grant v. Maxim Healthcare Svcs.*, 347 F.3d 1240 (11th Cir. 2003).  The first

determination is made at the so-called "notice stage," typically on a motion for

conditional class certification and for court-approved notice made by the plaintiff prior to

the commencement of discovery.  *Hipp*, 252 F.3d at 1218.  At this stage, the court utilizes

a "fairly lenient" standard in making a determination, based on the pleadings and any

affidavits which have been submitted, as to whether a class should be conditionally

certified, and whether notice of the action should be given to potential class members.  *Id*.

Once the class is conditionally certified, the putative class members are given notice and

the opportunity to "opt-in."  The action then proceeds as a representative action

throughout discovery.

"At the second stage, which is typically precipitated by a motion for decertification

by the defendant usually filed after discovery is largely complete and the matter is ready

for trial, the court has much more information on which to base its decision, and makes a

factual determination on the similarly situated question."  *Anderson*, 488 F.3d at 953

(internal quotations and citations omitted).  The "similarly situated" standard imposed at the second stage is less "lenient" than at the first and, although the specific contours of this "less lenient" standard are somewhat unclear, the Eleventh Circuit has held that "although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'"  *Id*. (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

**C. Discussion**

Since the instant action is only a motion for conditional class certification and to facilitate court-approved notice, and is therefore at the "notice stage" described in *Hipp*, the court will proceed to evaluate only "whether there are other employees who desire to opt-in and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."

The court finds that Esters's proposed class, "any and all persons employed by [St. Martin's] at its Birmingham facility and performing off the clock work pre-shift and/or during lunch for any work week during the three (3) years preceding the filing of this complaint in which he/she worked in excess of 40 hours," is overly broad.  Esters has not provided the court with any evidence to suggest that all but non-exempt, hourly-paid CNAs in the St. Martin's nursing home had the same job requirements as Esters and were subject to comparable pay provisions.  Instead, all of the declarations that Esters has

submitted are from CNAs who work in the nursing home.  While Esters maintains that

there are non-exempt, hourly-paid supervisors who are subject to the same company

policies regarding overtime compensation, there is no evidence to suggest that these

supervisors have sufficiently similar job requirements to the CNAs to render them

"similarly situated" within the meaning of the FLSA.  In fact, since these supervisors

admittedly bear some responsibility for the CNAs' work, at least in setting the CNAs'

schedules, they necessarily have different job requirements from the CNAs, who all

appear to be non-supervisory.  The court finds this supervisory/non-supervisory

distinction to be a legally significant one, and not a mere factual issue such as the minor

variations in job duties and locations that other courts have excluded from their "notice

stage" consideration of conditional certification.  *See, e.g.*, *Scott v. Heartland Home Fin.,*

*Inc.*, No. 05-2812, 2006 WL 1209813, at *3 (N.D. Ga., May 3, 2006).[8]  As a result, the

court decides that only the CNAs in the nursing home, and those CNAs alone, are

similarly-situated employees of St. Martin's who are appropriate for collective action

treatment under § 216(b).

　　　The court also finds that Esters's notice period should be extended to three years

from the date of the complaint, which was filed on January 11, 2008.  Although St.

Martin's correctly points out that a three-year statute of limitations is applicable in FLSA

---

[8] As the court advised Esters's counsel at oral argument, upon an objection that the class might turn out to be too limited, the court will entertain a motion to enlarge the class if Esters is eventually able to "demonstrat[e] a reasonable basis" for her allegations that other St. Martin's employees besides CNAs in the nursing home were similarly situated to Esters.

cases only where there is a showing of the employer's willfulness, *see* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131–35 (1988), Esters has sufficiently alleged willfulness on the part of St. Martin's, so the court therefore extends the opt-in period to three years from the filing of the complaint.

Based on the discussion above, the court will conditionally certify the following class:

> All current and former hourly-paid CNAs employed by St. Martin's in the nursing home of its Birmingham facility who, during any work week between January 11, 2005, and the present, **both** (1) performed "off-the-clock" work either before or after their regularly-scheduled shift or during lunch **and** (2) worked in excess of 40 total hours.

## II. NOTICE AND CONSENT

The court has provided the parties with a number of changes to Esters's proposed Notice of Right to Opt-In to Lawsuit and Consent to Become a Party Plaintiff form, and it has also solicited comments about these changes from the parties. The court finds that the final versions of the notice and consent form, as attached to the Order accompanying this Memorandum Opinion, are due to be approved.

## III. MOTION TO TOLL

At oral argument, Esters's counsel seemed willing to withdraw this motion after the court indicated that it was prepared to rule on the motion for conditional class certification and to approve the notice and consent form within a short period of time. In spite of this discussion, however, Esters submitted a reply to St. Martin's opposition to

this motion immediately after the hearing concluded, so the court assumes that Esters continues to assert its position that the FLSA's statute of limitations should be tolled while the court rules on the motion for conditional class certification.  The court notes that Esters's reply, filed on July 30, 2008, is untimely filed, since the court's submission order of June 16, 2008, (doc. 20), required any reply to be filed by July 22, 2008.  Thus, although the court does not consider Esters's untimely reply brief, the court nevertheless addresses the merits of Esters's underlying motion.

The Eleventh Circuit has expressly limited the situation in which a statute of limitations may be equitably tolled: "Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence."  *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis in original)).  At this point in this case, there have been no extraordinary circumstances, but instead only the very ordinary circumstance of a two-month submission period.  Moreover, Esters has not identified any specific St. Martin's employees who have not been able to file timely claims.  While it is possible that at some later date Esters will have a ripe claim to toll the statute of limitations, given no present extraordinary circumstances and no showing that specific employees might be prejudiced, Esters has not presently met that burden, so the motion to toll the statute of limitations is due to be denied as unripe.

12

**IV. CONCLUSION**

Based upon the foregoing, the court is of the opinion that Esters's Motion to Facilitate Court-Approved Notice Under 29 U.S.C. § 216(b), (doc. 15), is due to be granted, so that the class of "all current and former hourly-paid CNAs employed by St. Martin's in the nursing home of its Birmingham facility who, during any work week between January 11, 2005, and the present, **both** (1) performed "off-the-clock" work either before or after their regularly-scheduled shift or during lunch **and** (2) worked in excess of 40 total hours" is conditionally certified to proceed as a collective action. The *final* versions of Esters's Notice of Right to Opt-In to Lawsuit, (doc. 16, Ex. A), and Consent to Become a Party Plaintiff, (doc. 16, Ex. B), attached to the accompanying Order, are due to be approved. Finally, Esters's Motion to Toll the Statute of Limitations, (doc. 18), is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 25th day of August, 2008.

*Sharon Lovelace Blackburn*

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE